IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Arlington Video Productions,
Inc.,

    Plaintiff,

  v.                     Case No. 2:08-cv-122

Fifth Third Bank,

    Defendant.

MEMORANDUM OPINION AND ORDER

    This is an action filed by plaintiff Arlington Video Productions, Inc., an Ohio corporation, against defendant Fifth Third Bank, also an Ohio corporation. This action was originally filed in the Court of Common Pleas of Franklin County, Ohio, on December 24, 2007. On February 8, 2008, defendant filed a notice of removal pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d).

    In the first amended complaint filed on May 22, 2008, plaintiff asserted individual and class claims for alleged violations of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A)(11) (Count One), and for alleged breach of contract and of the duty of good faith and fair dealing (Count Two), and unjust enrichment (Count Three) under Ohio common law. In an order filed on May 1, 2009, this court granted defendant's motion to dismiss Counts One and Three, and also dismissed the claim for breach of the duty of good faith and fair dealing advanced in Count Two. Defendant's motion to dismiss the breach of contract claim asserted in Count Two was denied. By order filed on September 13, 2010, this court denied plaintiff's motion for class

certification.  This matter is now before the court on the cross-motions of the parties for summary judgment on plaintiff's breach of contract claim.

I. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) and (B).  In considering a motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011).

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which it bears the ultimate burden of proof at trial.  Id.  Once the moving party

meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial. Id. at 322 n. 3. "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." Kiemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298 (6th Cir. 2008). A fact is "material" only when it might affect the outcome of the suit under the governing law. Id; Anderson, 477 U.S. at 248.

The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts[.]" Matsuchita, 475 U.S. at 586. A mere scintilla of evidence is not enough. Anderson, 477 U.S. at 252; Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir. 2006). Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(3)(noting that the court "need consider only the cited materials").

II. Breach of Contract Claim

A. Sufficiency of Notification of Fees

In Count Two of the first amended complaint, plaintiff asserts a claim for breach of contract. To prove a breach of contract claim under Ohio law, plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Nilavar v. Osborn, 137 Ohio App.3d 469, 483, 738 N.E.2d 1271 (2000). Ordinarily, the interpretation of written contract terms, including a determination of whether the terms are ambiguous, is a matter of law for initial determination by the court. See Savedoff v. Access Group, Inc.,

3

524 F.3d 754, 763 (6th Cir. 2008); Inland Refuse Transfer Co. V. Browning-Ferris Ind. Of Ohio, Inc., 15 Ohio St.3d 321, 323, 474 N.E.2d 271 (1984)("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.")

Plaintiff is an Ohio corporation with its principal office in Columbus, Ohio. Evan Newman, plaintiff's owner, first opened a Fifth Third business checking account in plaintiff's name as an incorporated entity on August 3, 2000. Plaintiff originally alleged that the "contract" allegedly breached by defendant consisted of a January 19, 2007, letter it received from Fifth Third, identified as Attachment C. Am. Complaint, ¶ 59.[1] Doc. 83-4, Newman Aff., ¶¶ 4-5. However, as an exhibit to its motion to dismiss previously filed in this case, defendant produced a signed signature card dated August 3, 2000, which it contended constituted the contract between Fifth Third and plaintiff. See Doc. 19-2, p. 4. In its memorandum contra the motion to dismiss, plaintiff agreed that the August 3, 2000, signature card and the Rules & Regulations booklet constituted the original agreement of the parties. Doc. 20, p. 7.

The "Terms and Conditions" section of the August 3rd signature card which forms a part of the contract in this case states that the agreement incorporates

---

[1] This letter advised plaintiff that its account would be converted to one of three new types of business accounts, and plaintiff was notified by its January statement that the account had been converted to a Business Preferred checking account. The letter advised plaintiff that the features of the new account included no monthly maintenance fee with a $25,000 minimum account balance, up to 500 free transactions per month, up to $25,000 in free monthly deposits of coin and currency, a Cash management Essentials package with optional direct deposit and wire capabilities, and optional Money Market Savings Sweep capability. The letter did not discuss any other changes to the terms or conditions of plaintiff's contract with Fifth Third.

> the Rules, Regulations, Agreements, and Disclosures established by Bank from time to time, clearing house rules and regulations, state and federal laws, recognized banking practices and customs, <u>service charges as may be established from time to time</u> and is subject to laws regulating transfers at death and other taxes.

Doc. 19-2, p. 4, ¶ 2 (emphasis supplied).  The agreement also states that the signers of the agreement "acknowledge receipt of a copy of the Rules and Regulations, Agreements, and Disclosures of Bank and agree to the terms set forth therein." Doc. 19-2, p. 4, ¶ 7.  Thus, when plaintiff opened the account and signed the signature card, plaintiff agreed that the account would be governed by the Rules and Regulations, and there was a contractual "meeting of the minds" in that regard.

The document entitled "Rules & Regulations Applicable to All Fifth Third Accounts and Cards June 1, 2000" which was in effect when the plaintiff's account was opened states in part:

> These Rules and Regulations, as well as fees and charges contained on the Fee Schedule may be altered and amended at any time by the Bank and as altered or amended shall be binding on all Customers after having been made available in the offices of the Bank for fifteen (15) days or by such other method as specifically provided by law.

<u>See</u> Doc. 83-1, Newman Dep., Defendant's Ex. 7A, ¶ 9.

The Rules and Regulations manual expressly addresses the returned item fee.  The manual states, "When a deposited item is returned unpaid and charged back to your account, the Bank reserves the right to charge a returned item fee." Ex. 7A, ¶ 23.  The Rules and Regulations manual includes a section entitled "Fee Schedule" which contains a short list of fees which are applicable to all accounts.  The record also includes the Rules and Regulations booklets dated June 2005, June 2006, and June 2007.  These booklets

5

include basically the same language found above in paragraphs 9 and 23.  In the June 2006 and June 2007 booklets, a returned item fee of $10.00 is included in the Fee Schedule.  The deposit adjustment fee is not included in this schedule because it does not apply to all accounts; it has never been applicable to personal checking account customers.  See Doc. 51-28, Declaration of Mark Erhardt, Manager of Retail Product Development, ¶ 8.

In January 2001, plaintiff was charged a deposit adjustment fee.  Doc. 83-1, Newman Dep., p. 135.  A deposit adjustment fee is charged when a customer presents a deposit that does not balance, thereby requiring adjustment by defendant's operations team to balance the deposit presented by the customer.  Doc. 83-5, Deposition of Andy Wilson, Vice President of the Business Banking Product Management Team of Fifth Third Bank, p. 32.  Mr. Newman asked a bank employee to reverse the fee, and the fee was reversed.  Doc. 83-1, Newman Dep., pp. 136-138.  On four other occasions prior to 2007, plaintiff was charged a deposit adjustment fee which was waived at plaintiff's request.  Plaintiff was also charged returned item fees of $10.00 in January of 2004.  Doc. 83-1, Newman Dep., pp. 173-176.

Plaintiff received an account statement in August of 2007 which included deductions for a "service charge" in the amount of $41.00.  Doc. 88-3, Defendant's Ex. 13, p. 21.  Mr. Newman was told by a Fifth Third representative that the charge included two deposit adjustment fees of $8.00 each and a returned item charge.  Am. Complaint, ¶ 30; Doc. 85-1, Defendant's Ex. 18.  Plaintiff further alleges that it was charged a fee of $12.50 for a returned deposited item, but that the Rules and Regulations booklet provided to plaintiff stated that the fee for this service was $10.00.  Am.

6

Complaint, ¶ 34. On August 20, 2007, Mr. Newman was given a printout from the defendant's computer system listing fees applicable to plaintiff's account. The printout was labeled "For Internal Use Only" and contained the disclaimer "Note: Other fees may apply." Am. Complaint, ¶ 31. Plaintiff alleges that it was again charged a $8.00 fee for deposit adjustment on the account statement received in September of 2007. Doc. 82-1, Ex. 16. On these occasions, the defendant refused plaintiff's requests to reverse the fees.

Plaintiff now seeks to recover damages in the amount of $29.00 for allegedly undisclosed fees appearing on the August 2007 statement, and $8.00 for the deposit adjustment fee charged on the September 2007 statement. Evidence shows that as of July 2007, plaintiff had previous knowledge that the deposit adjustment and returned item fees were applicable to its account. However, plaintiff argues that because Mr. Newman believed as of July of 2007 that the deposit adjustment fee was $6.00 when in fact it had been increased to $8.00, and that the returned item fee had been increased from $10.00 to $12.50, plaintiff should at least recover the difference between those amounts. Plaintiff also claims allegedly undisclosed fees of an unspecified nature totaling $41.41 which were charged to its account from 2001 to 2006. These earlier fees were not specifically identified in the first amended complaint and they will be addressed later in this order.

Plaintiff argues that the defendant breached its contractual obligation to notify plaintiff concerning any changes in fees because the deposit adjustment fee did not appear on any comprehensive fee list which was made available to or given to plaintiff. In the order denying class certification, this court

7

concluded that the Rules and Regulations do not require that a charged fee appear on a "then current Fifth Third Fee Schedule" or any other compiled list of fees, and that Fifth Third is permitted to charge any fee so long as prior notice of the fee is provided in an appropriate manner to the customer. See Doc. 66 at 8-13.  This court noted that the Truth in Savings Act, 12 U.S.C. §4301 et seq., which requires a bank to maintain "a schedule of fees and charges" applicable to personal consumer checking accounts, see 12 U.S.C. §4303(a), is not applicable to business accounts such as plaintiff's account. See 12 U.S.C. §4313(1) (defining "account" as "any account intended for use by and generally used by consumers primarily for personal, family or household purposes.").

The language of ¶ 9 of the Rules and Regulations indicates that as long as information concerning the altered or amended rule, regulation, fee or charge was made available in defendant's offices for fifteen days prior to the fee or charge being imposed, or the customer was notified of the amendment or alteration by some other method provided by law, the change in the fee or charge is binding on defendant's account holders.  There is no requirement in the contract that a change in the fee be included in the Rules and Regulations "Fee Schedule" or some other comprehensive compiled list of fees which is made available to defendant's customers.

Plaintiff also argues that because Mr. Newman was personally unaware of the amount of the fees prior to July of 2007, defendant's notice was inadequate.  In other words, plaintiff argues that the account agreement required defendant to provide individual notice of fee changes to all customers in some uniform or general manner.  As noted in the previous order denying class certification, although a bank is required to provide a "clear and

8

conspicuous disclosure" of the amount of any fees or charges imposed on each periodic statement provided to a personal account holder, see 12 U.S.C. §4307(3), this requirement of the Truth in Savings Act does not extend to business account holders. See Doc. No. 66 at pp. 11-12.  There is no language in the relevant documents comprising the contract at issue here which would require that plaintiff have actual personal knowledge of the fees or that defendant utilize some uniform system of notification before notice can be deemed adequate.  Rather, the Rules and Regulations clearly state that the rule, regulation, fee or charge "as altered or amended" is binding if that rule, regulation, fee or charge is made available in defendant's offices for fifteen days or by such other method as specifically provided by law.  Therefore, even assuming that plaintiff was unaware of the deposit adjustment or returned item fees or their amounts, the charging of these fees to plaintiff's account would not result in a breach of the account agreement so long as the information concerning fees was made available in defendant's offices for fifteen days prior to the imposition of the fees.

Defendant has presented evidence that the information was made available in defendant's offices for fifteen days prior to the imposition of the fees.  Defendant has presented the second declaration of William Curry, Enterprise Program Manager for the defendant.  Doc. 82-2.  Mr. Curry stated that "Fifth Third always provides information regarding fee changes for business accounts to its financial center branches at least fifteen days prior to that change becoming effective."  Doc. 82-2, ¶ 6.  He further stated that "Fifth Third always makes information regarding fee changes for business accounts available in the offices of the bank at least

9

fifteen days prior to that change becoming effective." Doc. 82-2, ¶ 7. He also stated that information concerning the increase in the deposit adjustment fee from $6.00 to $8.00 in January of 2006 was made available in the offices of Fifth Third for at least fifteen days before Fifth Third charged plaintiff the deposit adjustment fee of $8.00. Doc. 82-2, ¶ 8. Mr. Curry further stated that information concerning the increase in the returned item fee from $10.00 to $12.50 in January of 2006 was made available in the offices of Fifth Third for at least fifteen days before Fifth Third charged Arlington Video the returned item fee of $12.50. Doc. 82-2, ¶ 11.

The record also includes the first declaration of Mr. Curry, in which he stated that "Fifth Third always makes information regarding fee changes for business accounts available in the offices of the bank at least fifteen days prior to that change becoming effective." Doc. 52-20, ¶ 4. See also Declaration of Greg Eiting, Manager of Retail Operations, Doc. 52-33, ¶ 5 ("When Fifth Third decides to make a business account fee change, it sends notification of the change to each of its branches at least fifteen days prior to implementation of the fee change so that the representatives at those branches can adequately discuss the fee with the customers impacted by the change.").

Plaintiff argues that these declarations are insufficient to establish the matters contained therein. However, Fed. R. Civ. P. 56(c)(1)(A) provides that a motion for summary judgment may be supported by affidavits or declarations. Mr. Curry states in his declaration that he has "personal knowledge of the facts set forth in this declaration." Doc. 82-2, ¶ 1. In any event, Mr. Curry was also deposed, and plaintiff had the opportunity to ask Mr. Curry

10

about defendant's procedures for making changes in fees available to customers at branch locations.  Mr. Curry testified that notice of fee changes "would be a communication, internal communication, to all branches that would be in advance of those fees going into effect."  Doc. 51-36, Curry Dep., p. 32.  Mr. Eiting also testified in his deposition that any applicable changes and the effective dates of those changes are communicated in advance to all branches through e-mail and newsletter.  Doc. 83-2, Eiting Dep. p. 41.

Plaintiff argues that Mr. Curry's declaration does not explain how the fee information was made available to the plaintiff. However, as noted above, the account agreement does not require individual notification regarding fee information; rather, making the information available at defendant's branches at least fifteen days prior to charging the fee is all that is required.  Plaintiff has pointed to no evidence that information concerning the increase in the deposit adjustment and returned item fees was not made available at defendant's branches prior to July of 2007.

Plaintiff claims that defendant was unable to locate or provide information regarding the deposit adjustment and returned item fees when he inquired about those fees in August of 2007, and that defendant failed to provide an internal document listing the fees or confirming that his account was subject to the fees.  As noted above, defendant was not required under the contract to maintain all fees in a compiled list or fee schedule.  In addition, Mr. Newman acknowledged in his deposition, Doc. 82-1, pp. 187-90, that on August 9, 2007, he was provided with a computer printout, Doc. 85-1, Defendant's Exhibit 18, which listed two adjustment fees and two returned item fees totaling $41.00.  Defendant has presented the Second Declaration of James Bingham, Senior Manager

11

in Applications Development with the defendant, who stated that plaintiff's account was subject to the deposit adjustment fee and the returned item fee.  Doc. 58-2, ¶¶ 4-5.  Plaintiff has pointed to no evidence to contradict Mr. Bingham's statements.

Defendant has presented evidence sufficient to establish that notice of the fees and the changes in the amount of the fees was provided in accordance with the Rules and Regulations by making that information available at the defendant's branches fifteen days prior to the fee being imposed.  This is all the notice which was required under the terms of the account agreement.  No evidence has been presented which refutes the defendant's evidence in that regard or demonstrates the existence of a genuine dispute.

B. Fees Prior to July 2007

Plaintiff also claims allegedly undisclosed fees totaling $41.41 which were charged to its account prior to 2007.  Doc. 83-4, Newman Aff.  p. 4.  Some of the fees on the list were waived and the money was refunded.  No recovery can be had as to these fees, since a claimant seeking to recover for breach of contract must show damage as a result of the breach.  Textron Financial Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (1996).  In addition, defendant argues that any recovery of the pre-2007 fees is barred by the contractual limitations period and the voluntary payment doctrine.

Under Ohio law, the parties to a contract may validly limit the time for bringing an action on a contract or taking some other action to perfect a claim to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one.  Angel v. Reed, 119 Ohio St.3d 73, 75, 891 N.E.2d 1179 (2008); R.E. Holland Excavating Co.

12

v. Montgomery County Bd. of Comm'rs, 133 Ohio App.3d 837, 842, 792 N.E.2d 1255 (1999)(addressing two contractual limitations periods for filing notice of claim within sixty days and filing suit within sixty days of denial of claim).  The Rules and Regulations provide in relevant part that the customer "agrees to carefully examine and reconcile account statements" and to "notify Bank of any discrepancy with any item, including, but not limited to, deposits, withdrawals, and checks, within thirty (30) days of the statement mailing date."  Doc. 83-1, ¶ 29.  Paragraph 29 also states that the customer agrees that the bank will not be liable if the customer fails to exercise ordinary care in examining its statements.  A service charge qualifies as "an item," and a dispute concerning a service charge constitutes a "discrepancy."  The thirty-day period is a reasonable amount of time in which to expect a bank customer to review its account statement.  There is no evidence that plaintiff brought any of the pre-2007 fees it now seeks to recover to the defendant's attention within thirty days of the mailing date of the account statements on which those fees were contained.

Plaintiff argues that the monthly statements did not provide it with sufficient information to contest the fees.  However, the statements indicated that plaintiff was being charged a service fee.  See Doc. 88-3, p. 20, Defendant's Ex. 13.  Mr. Newman testified in his deposition that as early as 2001, a service charge appeared on plaintiff's statement.  Doc. 82-1, p. 152.  The fact that a service charge appeared as a deduction from the account was sufficient to put plaintiff on notice that a fee was being charged.  At that point, plaintiff had an obligation to enquire further concerning the nature of the fee.  The list of fees attached to Mr. Newman's affidavit reveals that from 2001 through 2006, plaintiff

contested some of the charged fees, and those fees were reversed and the money was refunded. Doc. 83-4, p. 4. The fact that plaintiff contested some of the fees charged prior to 2007 demonstrates that plaintiff understood its ability to question the service charges appearing on its statements. Since there is no evidence that plaintiff contested other service charges within the thirty-day period which were not refunded, the failure to object within thirty days as required by the Rules and Regulations constituted acceptance of those charges by plaintiff.

Defendant also argues that the pre-2007 claims are barred under the voluntary payment doctrine. The Ohio Supreme Court has stated: "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." State ex rel. Dickman v. Defenbacher, 151 Ohio St. 391, 395, 86 N.E.2d 5 (1949) cited in Scott v. Fairbanks Capital Corp., 284 F.Supp.2d 880, 894 (S.D.Ohio 2003). The erroneous interpretation of a contract is a mistake of law, not of fact. Nationwide Life Ins. Co. v. Myers, 67 Ohio App.2d 98, 103, 425 N.E.2d 952 (1980). Thus, a payment made by reason of a wrong construction of the terms of a contract is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back. City of Cincinnati v. Gas Light & Coke Co., 53 Ohio St. 278, syll. para. 3, 41 N.E. 239 (1985).

Plaintiff argues that the payment of fees was not voluntary because the fees were automatically deducted from its account. However, the Rules and Regulations state that "[a]ny indebtedness now or hereafter owing to the Bank by a Customer, either

individually or jointly, may be charged to any deposit account in the name of such Customer[.]" Doc. 83-1, ¶ 6.  The fees charged to plaintiff's account qualify as an "indebtedness" to the defendant. Thus, plaintiff agreed to the automatic deduction of fees when it entered into the account holder agreement.  In addition, plaintiff was obviously aware that it could contest the service charges, as it did so on numerous occasions.  On those occasions when plaintiff did not contest the fees, its payment of the fees must be deemed voluntary.

Plaintiff also argues that it did not pay the fees with full knowledge of the facts because the specific nature of the fees was not indicated in the account statement.  As noted above, the statements indicated that plaintiff was being charged a service fee.  See Doc. 88-3, p. 20, Defendant's Ex. 13; Doc. 82-1, p. 152. The fact that a service charge appeared as a deduction from the account was sufficient to put plaintiff on notice that a fee was being charged and to obligate plaintiff to enquire further concerning the nature of the fee to determine if the fee should be contested.  When plaintiff did inquire concerning the nature of the fees encompassed in the service charge, that information was provided.

Plaintiff also argues that its payment of these fees was not voluntary because it challenged the deduction of the fees from its account.  The schedule of pre-2007 fees, Doc. 83-4, Newman Aff. at p. 4, includes fees which plaintiff presumably contested because they were refunded.  Plaintiff indicated that prior to 2007, whenever Mr. Newman asked about a service charge, defendant informed him about the nature of the fees, but then agreed to reverse the fees.  Doc. 85, p. 3-4.  Any challenged fees which

15

resulted in a refund cannot support a claim for damages.  Mr. Newman's affidavit does not identify any fees on the list which were contested but not refunded.

The evidence in the record indicates that plaintiff's claims to pre-2007 fees are barred by the contractual limitations period and the voluntary payment doctrine, and no genuine dispute has been shown to exist on these issues.

Conclusion

In accordance with the foregoing, plaintiff's motion for summary judgment (Doc. 83) is denied.  Defendant's motion for summary judgment (Doc. 82) is granted.  In accordance with this order and the court's order of May 1, 2008 (Doc. 15), the clerk shall enter judgment in favor of the defendant on all of plaintiff's claims.

Date: September 6, 2011           _____s/James L. Graham_____
                                  James L. Graham
                                  United States District Judge